NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2040
_____

UNITED STATES OF AMERICA


v.


RICHARD RIVERA,
a/k/a "Richard Toro,"
a/k/a "Magoo,"


Appellant
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(Crim. No. 09-cr-00003-002)
District Judge:  Honorable Mary A. McLaughlin
_____

Submitted Under Third Circuit L.A.R. 34.1(a),
May 24, 2011

BEFORE:  FUENTES, FISHER, and NYGAARD, *Circuit Judges*

(Opinion Filed:  August 4, 2011)
_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*.

Richard Rivera appeals the District Court's denial of his motion to suppress on the ground that the evidence was the product of an unlawful seizure. For the reasons set forth below, we will affirm the decision of the District Court.

I.

Because we write for the parties, we discuss the facts only to the extent necessary for the resolution of the issues raised on appeal. As part of an investigation of various drug trafficking organizations in Philadelphia, the Federal Bureau of Investigation ("FBI") arranged for a confidential informant ("CI") to conduct several recorded phone calls with targeted individuals. On March 27, 2008, the CI called the Appellant, Richard Rivera ("Rivera"), to set up a drug transaction. During that call, Rivera agreed to drive with the CI to an apartment complex located at 714 West Lehigh Avenue, where Rivera would obtain cocaine for the CI.

Upon listening to the recorded phone conversations between the CI and Rivera, the FBI strategically placed agents and Philadelphia police officers around the outside of the apartment complex. After arriving at the apartment complex with the CI, Rivera got out of the car and walked inside the building. Once inside, Rivera called the CI to tell him that he had "a dirt and a six deuce," street terms for 125 grams and 62 grams of cocaine, respectively. The CI telephoned an FBI agent from his vehicle and told him that Rivera had obtained cocaine, at which point the law enforcement officers decided to apprehend Rivera.

Approximately fifteen to twenty minutes later, Rivera exited the building and began walking southbound on Franklin Street, directly towards Police Sergeant Friel

("Friel"), who was seated in his vehicle. Friel left the car, verbally identified himself as a police officer (he was also wearing a black vest with the word "POLICE" printed on the front), and told Rivera to stop. Rivera immediately began to run in the opposite direction, pursued by Friel and another officer. During the chase both officers witnessed Rivera discard a clear bag containing white powder. Once Rivera was apprehended, the officers returned to retrieve the clear bag, which contained 62.54 grams of cocaine. The police also recovered $1871 from Rivera's pocket.

Rivera was charged with possession with intent to distribute and conspiracy to distribute less than 500 grams of cocaine under 21 U.S.C. § 841(a)(1) and § 846. Rivera moved to suppress the bag of cocaine retrieved by the officers on the theory of "forced abandonment," referring to property that is abandoned as a direct result of an unlawful seizure.[1] He argued that the officers who made the arrest lacked probable cause to pursue him, because they had not observed him participate in any illegal activity and relied solely on information provided by a CI whose reliability had not been established. The District Court found that the officers had probable cause to arrest Rivera, and thus denied the motion to suppress. In the alternative, the District Court held that the evidence obtained was not the result of "forced abandonment" because a seizure did not occur until the officers physically apprehended Rivera, by which time Rivera had already voluntarily dropped the bag of cocaine. Rivera was subsequently convicted and sentenced to 168

---

[1] Rivera also moved to suppress the money found in his pocket and statements he made to the police subsequent to his arrest as products of an unlawful seizure. However, on appeal Rivera challenges only the court's decision as it relates to the suppression of the narcotics.

3

months' imprisonment on both counts, to run concurrently. Rivera now appeals the decision of the District Court.[2]

II.

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. Evidence acquired during an unlawful search or seizure, as well as evidence obtained as a direct or indirect product of such an incursion, must be suppressed at trial. *Wong v. United States*, 371 U.S. 471, 484-85 (1963) (citing *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920); *Boyd v. United States*, 116 U.S. 616 (1886)). "We review the district court's denial of a motion to suppress for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the court's properly found facts." *United States v. Kennedy*, 638 F.3d 159, 163 (3d Cir. 2011) (quoting *United States v. Silveus*, 542 F.3d 993, 999 (3d Cir. 2008) (internal quotation marks and brackets omitted)).

Not every interaction between a citizen and an officer of the law is considered a "seizure." *Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968). "Only when the officer, by means of [either] physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.* But a mere show of authority by itself is not sufficient to constitute a seizure under the Fourth Amendment; a seizure occurs only if the person submits to the show of authority. *United States v. Brendlin*, 555 U.S. 249, 254 (2007) ("A police officer may make a seizure by a show of authority and

---

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231 and we have jurisdiction over the District Court's final order pursuant to 28 U.S.C. § 1291.

4

without the use of physical force, but there is no seizure without actual submission.")
(citing *California v. Hodari D.*, 499 U.S. 621, 626 n.2 (1991)).

In *Hodari D.*, the Supreme Court held that the defendant, who (like Rivera) dropped a bag of cocaine while fleeing the police, had not been "seized" under the Fourth Amendment because he had not complied with the officers' show of authority before being physically apprehended. 499 U.S. at 626-27. Similarly, even assuming that Friel's actions may be considered a show of authority, the record clearly shows that Rivera did not submit to that authority in any way. Therefore, Rivera was not seized before voluntarily discarding the bag of cocaine and the bag of cocaine Rivera dropped during the chase was not a "forced abandonment."

To the extent that Rivera relies on *United States v. Mendenhall*, 446 U.S. 544 (1980), to support the position that he was seized immediately upon Friel's show of authority, that argument is flawed. Under *Mendenhall*, a person is "seized" under the Fourth Amendment "only if in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at 554. Yet Rivera ignores language in *Hodari D.* informing us that "the *Mendenhall* test was 'a necessary, but not a sufficient condition for seizure—or, more precisely, for seizure effected through a 'show of authority.'" *United States v. Smith*, 575 F.3d 308, 313 (3d Cir. 2009) (quoting *Hodari D.*, 499 U.S. at 628). Whether or not a reasonable person in Rivera's situation would believe that he was free to leave, the Supreme Court made clear in *Hodari D.* that there is no seizure without submission. Therefore, as in *Hodari D.*, since Rivera "did not comply with [the officer's show of authority] he was not seized

5

until he was tackled. The cocaine abandoned while he was running was in this case not the fruit of a seizure, and his motion to exclude evidence of it was properly denied." *Id.* at 629.[3]

III.

For the foregoing reason, we affirm the District Court's decision to deny the motion to suppress the bag of cocaine from evidence.

---

[3] While it is not necessary to our decision, we agree with the District Court's holding that the officers had probable cause to arrest Rivera based on the fact that the CI's information was corroborated by the recorded phone conversations and the officer's observation prior to the arrest.  At the very least the arresting officers had the "reasonable suspicion" necessary to make a "brief investigatory stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).